IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| [1] DUNN AIR, LLC a Delaware Limited Liability Company,<br>    Plaintiff,<br><br>vs.<br><br>[2] BUDSGUNESHOP.COM, LLC a Kentucky Limited Liability Company,<br><br>    Defendant. | )<br>)<br>)<br>)<br>) Case No. CIV-18-59-M<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

Plaintiff Dunn Air, LLC, a Delaware Limited Liability Company, for its cause of action against BudsGunShop.com, LLC, a Kentucky Limited Liability Company, respectfully states and alleges as follows:

**I. PARTIES, JURISDICTION, & VENUE**

1. Plaintiffs Dunn Air, LLC is a State of Delaware Limited Liability Company and its managing member is James Dunn & Associates, PLLC an Oklahoma Limited Liability Company.

2. Defendant BudsGunShop.Com, LLC is a State of Kentucky Limited Liability Company.

3. Plaintiff Dunn Air, LLC, is a limited liability company created, formed, and maintained under the laws of the State of Delaware maintaining its place of business at 1209 Orange St., Wilmington, DE, 19801. The principal place of business of its managing member, James Dunn & Associates, PLLC, is 1215 Classen Drive, Oklahoma City, OK, 73103. Accordingly, the principal place of business, or the place where Dunn Air, LLC's officer directs, controls and coordinates the corporation's activities, is located at 1215 Classen Drive, Oklahoma

City, OK, 73103. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 130 S.Ct. 1181, 175 Led.2d 1029 (2010).

4. Defendant BudsGunShop.com, LLC maintains its principal place of business, or the place where BudsGunShop.com, LLC's officers direct, control and coordinate the corporation's activities, is located at 1105 Industry Road, Lexington, KY, 40505. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 130 S.Ct. 1181, 175 Led.2d 1029 (2010).

5. According to the most recent records on file with the Kentucky Secretary of State, Rex L. McClanahan is the registered agent for BudsGunShop.com, LLC which registered agent's address is 1123 Winchester Road, Lexington, KY, 40505.

6. That the parties are entities from different states and the controversy in questions exceeds Seventy Five Thousand Dollars ($75,000.00) therefore, Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1).

7. Jurisdiction is further proper in this Court as the Plaintiff moves the Court to determine a contract dispute between the parties pursuant to 28 U.S. C. § 2201.

8. That on December 18, 2017, the parties entered into a written and executed Aircraft Purchase Agreement involving the Plaintiff's sale, and the Defendant's purchase, of a 2006 year model Cessna CJ3 aircraft, Serial Number 525B-0100 with FAA Registration Number N85GT. (See Plaintiff's Exhibit 1 attached hereto).

9. The December 18, 2017 executed Aircraft Purchase Agreement contains a Governing Law and Jurisdiction provision which specifically provides as follows:

> This Agreement shall be governed by the laws of the State where the plane is located at the time of closing.  **The parties agree that any legal proceeding based upon the provisions of this Agreement or breach thereof shall be brought exclusively in the law of the state the plane is located at the time of closing to the exclusion of all other courts and tribunals.**  The parties hereby consent and agree to be subject to the jurisdiction of the aforesaid courts in such proceedings.".

(See Plaintiff's Exhibit 1, pages 4-5, paragraph 20) (emphasis added).

10. On December 26, 2017, the Defendant specifically requested that "I would propose that we fully fund and close the transaction within the next few days and retain $50,000.00 in escrow." (Plaintiff's Exhibit 2).

11. That on December 27, 2017, the parties entered into a written and executed First Amendment to Aircraft Purchase Agreement moving up the closing to December 29, 2017 and providing for $50,000 to be held in escrow until all inspection were complete since the Defendant desired to close the transaction on December 29, 2017. (See Plaintiff's Exhibit 3).

12. The fully executed First Amendment to Aircraft Purchase Agreement by both the Plaintiff and Defendant provides that "Closing and payment (less Escrow Holdback as detailed below) shall occur on or before Friday, December 29, 2017. (See Exhibit 3, paragraph (1)(b).

13. That on December 27, 2017 the Defendant forwarded by email to Becky Brock the escrow agent a copy of the First Amendment with the statement "Attached is the executed Amendment for the closing." (See Plaintiff's Exhibit 4).

14. That on December 27, 2017, the Plaintiff executed and conveyed to the Escrow Agent the Aircraft Bill of Sale for the plane in questions to be held in escrow for closing. (Plaintiff's Exhibit 5).

15. That on December 27, 2017, the escrow agent Becky Brock confirmed receipt of the Bill of Sale for N85GT. (See Plaintiff's Exhibit 6).

16. That on December 29, 2017, the Plaintiff executed an Authorization to Close Escrow and release the Bill of Sale for the Aircraft in question. (Plaintiff's Exhibit 7).

17. That on December 29, 2017, the aircraft closing company through Becky Brock of International Aircraft Title & Escrow Inc. confirmed by email to the Plaintiff and Defendant

that "We have closed escrow for N85GT and I've attached the confirmation for your information." (Plaintiff's Exhibit 8 with attachments).

18.     That at all times up to, on and through December 29, 2017, the aircraft in questions, N85GT, was parked and located at Sundance Airport which physical address of the airport is 1300 N Sara Road, Yukon, Oklahoma, 73099, Canadian County, State of Oklahoma, which airport and N85GT was within the Federal Western District of the State of Oklahoma.

19.     The heading of Aircraft Purchase Agreement at paragraph 20 provides "Governing Law & Jurisdiction" the express language of paragraph 20 of the Aircraft Purchase Agreement contains a jurisdicitonal clause which specifically provides: **"The parties agree that any legal proceeding based upon the provisions of this Agreement or breach thereof shall be brought exclusively in the law of the state the plane is located at the time of closing to the exclusion of all other courts and tribunals."** (See Plaintiff's Exhibit 1, pages 4-5, paragraph 20) (emphasis added).

20.     That the First Amendment (Plaintiff's Exhibit 2) does not change, modify and/or amend the provisions of paragraph 20 or any venue provisions of the Aircraft Purchase Agreement.

21.     That venue is also properly laid in the United States Federal Court for the Western District of Oklahoma because:

        a. That at all relevant times herein during the contracting for the purchase of N85GT was located at Sundance Airport in the Western District of Oklahoma;

        b. That at the time of closing the Aircraft Purchase Contract and conveyance of title from the Plaintiff to the Defendant, the aircraft in question N85GT was located at Sundance Airport in the Western District of Oklahoma;

c. That the escrow closing agent Becky Brock and her employer International Aircraft Title & Escrow's principal address is 10007 S. Pennsylvania Ave, Suite F, Oklahoma City, Ok, 73159 which address is in the Western District of Oklahoma. (See Exhibit 1, paragraph (2)(a); Exhibit 5, and Exhibit 7).

d. That the Plaintiff and Defendant met at Sundance Airport in the Western District of Oklahoma where the Plaintiff made N85GT available for viewing by the Defendant.

e. That the Defendant was physically located at Sundance Airport in the Western District of Oklahoma when the Defendant verbally consented to purchase N85GT prior to entering the Aircraft Purchase Contract with the Plaintiff.

f. That the Plaintiff and Defendant both forwarded all legal documents, instruments, contracts, amendments and monetary funds to the Federal Western District of Oklahoma to coordinate, finalize and close the aircraft title and closing transfer while the aircraft N85GT was physically located in the Federal Western District of Oklahoma.

g. That the Managing Member of the Plaintiff who coordinated all legal transactions, negotiations and conveyanes with the Defendant resides in the Federal Western District of Oklahoma.

h. That the parties have chosen Oklahoma Law to govern this transaction since N85GT was located in Oklahoma at the time of closing and the Federal Western District of Oklahoma is well adverse in the application and interpretation of Oklahoma law.

22. That venue of this action is proper in convenient in the Federal Western District of Oklahoma because the parties have specifically contracted for jurisdiction, venue and choice of law to be controlled by the place where N85GT was located at the time of closing which place of location was the Federal Western District of Oklahoma. 28 U.S.C. § 1404(a); *Been v. O.K. Industries, Inc.*, 495 F.3d 1217, 1236 (10th Cir. 2007) ("To decide the effect of the contractual choice-of-law clause, we look to the forum state's choice-of-law rules."); *Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1033-34 (Okla. 2006) ("[I]n Oklahoma, the established choice of law rule in contract actions known as *lex loci contractus* is that, **unless the contract terms provide otherwise,** the nature, validity, and interpretation of a contract are governed by the law where the contract was made.") (emphasis added) (footnote omitted).

23. That the interests of justice will best be served by this matter being litigated in the Federal Western District of Oklahoma as the parties specifically agreed to such, that the Defendant came to the Federal Western District of Oklahoma for the viewing and verbal negotiations of the purchase of the plane, and; that both parties forwarded all documents, instruments, titles and funds to the Federal Western District of Oklahoma for such transaction to be processed and closed. 28 U.S.C. § 1404(a).

**III.     Cause of Action:  Declaratory Judgment.**

24. The Plaintiff advertised the sale of N85GT on a well-known aviation website known as Controller.

25. The advertisement of N85GT incorrectly stated that N85GT was on a Tap Blue engine plan.

26. Owners of aircraft often elect to purchase engine maintenance plans. Such engine maintenance plans are wholly elective and not required.

27. At all times material hereto, N85GT had an elective engine maintenance program of Tap Advantage.

28. On December 11, 2017, prior to verbally contracting and/or contracting in writing with the Defendant, the Plaintiff specifically and unambiguously advised the Defendant that: "Also, attached is the Tap Documents.  Controller has it as Blue and it is in Fact Tap Advantage Elite.  I asked Controller to fix the ad." (Plaintiff's Exhibit 9).

29. On December 11, 2017, the Plaintiff attached and forwarded to the Defendant a true and correct copy of the entire Tap Advantage Elite Coverage contract that N85GT was enrolled with Cessna and Williams International.  (Plaintiff's Exhibit 10).

30. The Tap Advantage Elite Coverage agreement with Cessna and Williams International was specifically disclosed and forwarded to the Defendant on December 11, 2017 and well in advance of any negotiations.  (Exhibits 9 and 10).

31. At the Attachment A of the contract, page 4, of Exhibit 10, the engine contract specifically provides that "*The TapAdvantage Elite Progressive Program is applicable to this agreement and a Progressive Addendum is attached and made part of this ProAdvantage Agreement Number CJ3-0100C."

32. The final page of the disclosed engine agreement, page 6, Exhibit 10, specifically shows that N85GT is subject to a progressive engine schedule.

33. N85GT through its creation has been transferred four (4) times including the transfer to the Defendant.

34. In late 2006, N85GT was first transfer was from Cessna to the original buyer.  At that original purchase from Cessna, N85GT was enrolled in the TapAdvantage Elite Progressive Program at hand.

7

35. Approximately six (6) years later, N85GT was sold to the second owner.

36. The second transferee of N85GT purchased N85GT with the transfer of the TapAdvantage Elite Progressive Program at hand.

37. In January of 2017, Dunn Air, LLC became the third transferee of N85GT. Dunn Air, LLC, as the third transferee of N85GT purchased N85GT with the transfer of the TapAdvantage Elite Progressive Program at hand.

38. The Defendant herein, BudsGunShop.com LLC, after full disclosure and having been given an actual copy of the purchased N85GT with the transfer of the TapAdvantage Elite Progressive Program at hand, purchased N85GT and took ownership of N85GT with the transfer of the TapAdvantage Elite Progressive Program at hand.

39. The entire history of N85GT, including the details of the TapAdvantage Elite Progressive Program was known by the Defendant before negotiations and ultimate purchase by Defendant.

40. On January 6, 2018, after purchasing and closing N85GT on December 29, 2017, the Defendant forwarded the Plaintiff an email stating Williams had advised the Defendant that there were invoices and an amendment to the Tap Agreement requiring a buy out. (Plaintiff's Exhibit 11).

41. On January 7, 2018, the Plaintiff responded to the Defendant's email advising him that each and every invoice owed to Williams had in fact been paid, and; confirmed that "The progressive was fully disclosed during our negotiations." (Plaintiff's Exhibit 12).

42. On January 7, 2018, the Plaintiff forwarded the Defendant a second email attaching the final invoice from Williams reflecting the proper engine hours and times along with

a printed statement showing that all invoices to date had been in fact paid by the Plaintiff. (Exhibits 13 and 14).

43. On January 8, 2018, the Defendant forwarded the Plaintiff an email proposing "If agreeable, let's settle on $29,500 for the items that need to be addressed." (Plaintiff's Exhibit 15).

44. On January 8, 2018, the Plaintiff responded to the Defendant's offer: "Sounds like a fair deal to me. Done at 29,500. Just email the closer and release the 20,500 balance to my 1031 exchange company. Thank you sir and it is a pleasure dealing with honorable people." (Plaintiff's Exhibit 16).

45. The total amount being referenced in the January 8, 2018 (Exhibit 16) is the $50,000 that the parties agreed to hold in escrow to accommodate the Defendant's desire to close the deal on December 29, 2017 due to the Defendant's tax considerations. (Plaintiff's Exhibit 2).

46. On January 8, 2018, the Plaintiff advised Becky Brock to "Please feel free to forward $29,500 of the escrowed funds pursuant to Joe Murphy's direction upon his request. The remaining escrow funds should be sent to Francine of my 1031 exchange company." (Plaintiff's Exhibit 17).

47. On January 8, 2018, the Defendant forwarded an email to Becky Brock stating "Mr. Dunn has agreed to pay $29,500 for the inspection/discrepancy items on N85GT. Please release the balance of $20,500 to his 1031 exchange company. You may send Toledo jet Center the funds directly or send them to me and I will forward the funds." (Plaintiff's Exhibit 18).

48. On January 8, 2018, Becky Brock confirmed to the Plaintiff and Defendant "I have released/wire transferred the funds per your instructions - $29,500.00 to Toledo Jet Center, LLC and the balance of $20,500.00 to TVPX/FBO Dunn Air, LLC." (Plaintiff's Exhibit 19).

49. The First Amendment to Aircraft Purchase Agreement specifically provides that **"Once it is confirmed by the Purchaser that Seller has met all its obligations as defined by the Agreement and this First Amendment, the Escrow Agent shall release the remaining funds back to Seller, and Purchaser shall release the Confirmation of Aircraft Delivery Certificate (Exhibit D) to Seller."** (Plaintiff's Exhibit 3, paragraph (1)(c)) (emphasis added). Exhibit D as referenced was contained in the Aircraft Purchase Agreement. (see Plaintiff's Exhibit 1, page 11).

50. After confirmation that the Seller (Plaintiff) had met all its obligations as defined by the Agreement and First Amendment as evidenced by the Defendant's releasing of the escrow funds on January 8, 2018, the Defendant forwarded, on January 11, 2018, the Plaintiff an email stating that there was a Williams invoice still open (which the Plaintiff denies as demonstrated by Exhibit 14), and: "I was informed that the agreement has a buyout amount of $119,263 if the owner does not want to continue paying the escalating premiums (premiums increase until CSI, which is between 2500 & 3000 hrs)" and forwarded an modified version of the Purchase Agreement's Exhibit D to Becky Brock the escrow agent. (Plaintiff's Exhibit 20).

51. The quoted buyout amount by Defendant in Exhibit 20 is elective by an owner if the owner desires to switch N85GT from the progressive contract to a non-progressive contract.

52. There is no requirement to change the program and N85GT can remain on the progressive program as disclosed to the Defendant for the entirety of N85GT's engine life.

53. The Defendant's reference to the $119,263 progressive buyout amount is an elective issue that the Defendant, as the 4th buyer, has directly solicited from Williams after completion of the purchase from Plaintiff, after all escrow funds have been released, and after the transaction between Plaintiff and Defendant had been finalized.

54. There is no requirement to change N85GT from the disclosed progressive plan at any given time, now or in the future.

55. The Defendant, as the new owner of N85GT, has now, after the completed purchase and after Plaintiff's satisfaction of all contractual provisions, decided that it wants to upgrade N85GT's engine maintenance plan from Tap Elite plan to a non-progressive plan.

56. The Defendant confirmed on January 11, 2018, that the Plaintiff had in fact advised the Defendant prior to entering the contract that N8GT was on Tap Elite and that on 12-11 (December 11, 2017) the Plaintiff had provided the Defendant a copy of the Tap Elite Program that N85GT was enrolled which included the progressive provisions. (Plaintiff's Exhibit 20 and Exhibit 10).

57. On January 20, 2018, the Defendant forwarded to the Plaintiff an email that was also cc'd to the Defendant's attorney, Barry Stilz of ksattorneys.com, confirming that the invoices have been paid to date; however, the amendment to the engine maintenance program have not been removed.

58. The Defendant is seeking $119,263.79 or some negotiated amount from the Plaintiff so that the Defendant can electively upgrade the disclosed progressive engine program to a more expensive elective non-progressive engine plan.

59. The Plaintiff moves the Court for a Declaratory Order establishing that the Plaintiff is not indebted to the Defendant for any further funds, obligations or conveyances relating to the completed aircraft transaction.

60. The Plaintiff would state that further evidentiary materials will likely be acquired supporting the factual allegations in this Petition after a reasonable opportunity for formal

discovery. The Plaintiff specifically incorporates herein the contents of the attached Plaintiff's Exhibits 1 through 21.

                              Respectfully submitted,

                              JAMES DUNN & ASSOCIATES, PLLC

                    BY:  S/James E. Dunn
                           James E. Dunn, OBA # 15222
                           Scott B. Hawkins, OBA #21694
                           1215 Classen Drive
                           Oklahoma City, OK 73103
                           Phone: (405)239-1000
                           Fax: (405)239-1003
                           *Attorneys for Plaintiff*